IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mauricio E. Weber, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 8:12-cv-03349-TMC-JDA |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Lieutenant FNU Hankins, Corporal Santos, | ) | |
| Captain FNU Ham, Officer Ashe, | ) | |
| | ) | |
| Defendants.[1] | ) | |
| _____ | ) | |

This matter is before the Court on a motion for summary judgment filed by Defendants. [Doc. 30.] Plaintiff is a pretrial detainee in the custody of the Anderson County Detention Center ("ACDC"). [Doc. 1.] Plaintiff is proceeding pro se and brought this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983, and submit findings and recommendations to the District Court.

Plaintiff filed this action on November 22, 2012,[2] generally alleging deprivation of his constitutional rights. [Doc. 1.] Defendants filed the instant motion for summary judgment

_____

[1]Defendants Captain Arlette Jones, Major Garry L. Bryant, Deputy Holden, Lieutenant Hayden, and Sergeant Tribble were dismissed from this action on April 1, 2013, when the Court granted Plaintiff's motion to amend/correct the Complaint to the extent Plaintiff sought to dismiss these defendants. [Doc. 24.] Defendants Lieutenant FNU Collins, Officer Reeves, Corporal Rhonda Latimer, and Lieutenant Looper were dismissed on December 18, 2013, when the Court granted Plaintiff's subsequent motion to amend/correct the Complaint to the extent Plaintiff sought to dismiss those defendants. [Doc. 54.]

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, this action was filed on November 22, 2012. [Doc. 1 at 43 (signed, dated Complaint), 45 (signed, dated certificate of service); Doc. 1-1 (envelope with no clear date stamp of when prison officials received the Complaint).]

on April 16, 2013.  [Doc. 30.]  On April 17, 2013, the Court issued an Order in accordance

with *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the summary

judgment/dismissal procedure and of the possible consequences if he failed to adequately

respond to the motion. [Doc. 31.]  On June 21, 2013, Plaintiff filed a response in opposition

to Defendants' motion [Doc. 41] and, on July 1, 2013, Defendants filed a reply [Doc. 46].

Accordingly, the motion is ripe for review.

## BACKGROUND[3]

As previously stated, Plaintiff is a pretrial detainee at ACDC.  [Doc. 1.]  Plaintiff

alleges that on November 15, 2010, Defendant Officer Ashe ("Ashe") approached Plaintiff's

cell to tell him to get dressed for court.[4]  [Doc. 1 ¶ 20.]  Ashe returned after five minutes,

but Plaintiff was using the restroom and not yet ready for court.  [*Id.* ¶ 21.]  Plaintiff then

began washing at his sink and, about five minutes later, Officer Rodriguez[5] ("Rodriguez")

called Plaintiff on the intercom to ask if he was dressed.  [*Id.* ¶¶ 22–23.]  Plaintiff told

Rodriguez that he needed ten more minutes but approximately five minutes later

Defendants Corporal Santos ("Santos") and Ashe approached Plaintiff's cell, demanding

that he get dressed.  [*Id.* ¶¶ 24–25.]  Plaintiff insisted that he be allowed to wash up and

make himself look presentable; then, Plaintiff alleges Santos threatened to shoot Plaintiff

---

[3]As previously stated, nine defendants have been voluntarily dismissed from this action, and only four defendants remain.  Many of the allegations in the Complaint do not relate to the remaining four Defendants.  Accordingly, in this Background section and throughout this Report and Recommendation, the Court relies on only the portions of the Complaint relating to the remaining Defendants.

[4]Plaintiff was mistakenly told he needed to be in court that day.  The detainee who had a court appearance that day was "Weaver," not "Weber." [Doc. 1 ¶ 47.]  Plaintiff alleges that Defendant Lieutenant Hankins is the one who mistakenly sent Ashe and Defendant Corporal Santos to Plaintiff's cell.  [*Id.* ¶ 59.]

[5]Officer Rodriguez is not a defendant in this action.

with her taser if Plaintiff did not put his jumpsuit on.  [*Id.* ¶¶ 28–29.]  Next, Santos opened the door and entered Plaintiff's cell.  [*Id.* ¶ 30.]  According to Plaintiff, Santos repeated her threat and Plaintiff stepped to the back of his cell in a non-threatening manner.  [*Id.* ¶¶ 31–32.]  Plaintiff alleges he asked for Santos's supervisor, and Santos asked if Plaintiff was refusing to comply with a direct order.  [*Id.* ¶¶ 33–34.]  In an effort to compromise, Plaintiff asserts he asked if he could at least brush his teeth and then, without provocation or warning, Santos shot Plaintiff with her taser.  [*Id.* ¶¶ 35–36.]

After the incident, Defendants Lieutenant Hankins ("Hankins") and Captain Ham ("Ham") assured Plaintiff there would be a thorough investigation.  [*Id.* ¶ 40.]  According to Plaintiff, the investigation "went no further than having Plaintiff on 'lockdown until further notice,'" which meant Plaintiff received only ten minutes of out-of-cell time every other day to shower.  [*Id.* ¶ 46.]  Additionally, Plaintiff alleges Ashe completed a false incident report to cover up or justify Santos's actions.  [*Id.* ¶ 60.]

Plaintiff claims he is entitled to relief because the actions of Santos in using physical force against Plaintiff and Ashe in failing to intervene and then filing a false incident report constitute punishment without due process of law in violation of the Fourteenth Amendment.  [*Id.* ¶ 81.]  He also asserts Santos's use of physical force constitutes the intentional tort of assault and battery.  [*Id.* ¶ 82.]  Plaintiff further alleges his Fourteenth Amendment rights were violated when Hankins and Ham placed Plaintiff on punitive lockdown without disciplinary charges or the right to be heard at a disciplinary hearing, resulting in depriving Plaintiff of out-of-cell recreation, telephone calls, and visitation.  [*Id.* ¶¶ 84–86.]  Finally, Plaintiff asserts Hankins's failure to use reasonable care to properly

identify the correct detainee to go to court constitutes negligence.  [*Id.* ¶ 89.]  Plaintiff requests damages and injunctive relief.

## APPLICABLE LAW

**Liberal Construction of *Pro Se* Complaint**

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings.  *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F.2d 1291 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).  *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.  *Hughes v. Rowe*, 449 U.S. 5 (1980) (per curiam).  Even under this less stringent standard, however, the *pro se* Complaint is still subject to summary dismissal.  The mandated liberal construction means only that if the court can reasonably read the pleadings to state a valid claim on which the petitioner could prevail, it should do so.  *Barnett v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  A court may not construct the plaintiff's legal arguments for him.  *Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

Section 1983 provides a private cause of action for plaintiffs alleging constitutional violations by persons acting under color of state law.  Section 1983 provides, in relevant part,

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or
> causes to be subjected, any citizen of the United States or any
> person within the jurisdiction thereof to the deprivation of any

4

> rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law,
> suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements:

(1) that the defendant "deprived [him] of a right secured by the Constitution and laws of the

United States" and (2) that the defendant "deprived [him] of this constitutional right under

color of [State] statute, ordinance, regulation, custom, or usage."  *Mentavlos v. Anderson*,

249 F.3d 301, 310 (4th Cir. 2001) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action"

requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured
> by the Constitution are protected only against infringement by
> governments.  This fundamental limitation on the scope of
> constitutional guarantees preserves an area of individual
> freedom by limiting the reach of federal law and avoids
> imposing on the State, its agencies or officials, responsibility
> for conduct for which they cannot fairly be blamed.

*Id.* at 310 (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653,

658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the

deed of an ostensibly private organization or individual" may at times be treated "as if a

State has caused it to be performed."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only

if, there is such a 'close nexus between the State and the challenged action' that seemingly

private behavior 'may be fairly treated as that of the State itself.'"  *Id.* (quoting *Jackson v.

Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged

constitutional deprivation "caused by the exercise of some right or privilege created by the

5

State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).  Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law.  As to the first of these determinations, a fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the

6

movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Commc'ns Satellite Corp*., 759 F.2d 355, 365 (4th Cir.1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56(e) provides in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must produce existence of every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

With respect to the claims against Hankins, Santos, Ham, and Ashe, Defendants argue the matters asserted by Plaintiff do not fall within the scope of § 1983; Ham cannot be held liable as a matter of law in any supervisory capacity for any acts of others over which he had no control; Defendants are entitled to qualified immunity; Plaintiff has failed to point to any physical injury he has suffered as a result of Defendants' actions or inactions; Defendants are entitled to Eleventh Amendment Immunity in their official capacities; while acting in their official capacities, Defendants are not "persons" under § 1983; and the claims should be dismissed as frivolous under 28 U.S.C. §§ 1915(e)(2))B)(I) and 1915A(b)(1)(1999).  [Doc. 30-1.]  The Court agrees summary judgment should be granted with respect to the conditions of confinement claims against Hankins and Ham but disagrees with respect to the excessive force claim against Santos, the failure to protect claim against Ashe, and the state law claims against Santos and Hankins.[6]

---

[6] To the extent Plaintiff brings this suit against Defendants in their official capacities under § 1983, Defendants are entitled to immunity pursuant to the Eleventh Amendment from Plaintiff's claims for monetary damages.  The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See, e.g., Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam) (citations omitted); *Hans v. Louisiana*, 134 U.S. 1, 10–11 (1890).  Further, Eleventh Amendment immunity "extends to 'arm [s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [and] is no different from a suit against the State itself," *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).  Therefore, Eleventh Amendment immunity protects state agencies and state officials sued in their official capacity from liability for monetary damages under 42 U.S.C. § 1983.  *Id.*  As a result, to the extent Plaintiff has alleged claims for monetary damages against Defendants in their official capacities under § 1983, those claims must be dismissed because Defendants in their official capacities are entitled to immunity pursuant to the Eleventh Amendment.  Plaintiff concedes he seeks damages against Defendants

8

**Conditions of Confinement Claims**

Plaintiff complains that he was improperly detained on punitive lockdown, resulting in no out-of-cell recreation, telephone calls, or visitation.  He raises this claim against Hankins and Ham.  Ham averred under oath that Plaintiff was placed in a single cell when he arrived at ACDC because inmates who are charged with murder, like Plaintiff, are initially detained alone to be evaluated and determine whether the inmate can be placed in general population.  [Doc. 30-2 ¶ 5.]  Plaintiff has remained detained in a single cell because his behavioral issues with other inmates and his repeated threats against staff members, particularly female staff members. [*Id.*] Defendants have determined that placing Plaintiff in general population would constitute a security risk.  [*Id.*]  Finally, Ham and Hankins both aver they do not determine cell assignments for inmates.  [*Id.* ¶ 7; Doc. 30-6 ¶ 10.]  The Court agrees Plaintiff has failed to establish a violation of his constitutional rights with respect to the conditions of his confinement.

Because at all relevant times Plaintiff was a pretrial detainee, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is used to evaluate conditions of confinement for those convicted of crimes.  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983).  Unlike convicted inmates, pretrial detainees have not been adjudicated guilty of a crime and may not be subjected to any form of "punishment."  *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  To establish that a condition or restriction of confinement is constitutionally impermissible "punishment," a pretrial detainee must show "either that it was (1) imposed with an expressed intent to

---

in their individual capacities and seeks injunctive relief against Defendants in their official capacities.  [Doc. 39 at 45.]

punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 538–40 (1979)).  Courts may infer that a restriction or condition is not reasonably related to a legitimate governmental objective, and is therefore punishment, if the restriction is arbitrary or purposeless.  *Bell*, 441 U.S. at 539.  However, while the purpose of pretrial confinement is to ensure the detainee's presence at trial, the detention center may impose restraints on the detainee that are reasonably related to the detention center's interest in maintaining the facility's security, even if the restraints "are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  *Id.* at 539–40.

In any event, "[t]he due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin*, 849 F.2d at 870.  Under the Eighth Amendment, protection against cruel and unusual punishment includes protection against inhumane conditions of imprisonment.  *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  To determine whether a prison official has violated a prisoner's Eighth Amendment rights, a court must analyze "whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)."  *Id.*; *see also Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (discussing Supreme Court decisions in Eighth Amendment cases and noting Eighth Amendment claims consist of objective and subjective components).  "What must be established with

10

regard to each component 'varies according to the nature of the alleged constitutional violation.'" *Williams*, 77 F.3d at 761 (quoting *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)).

During the time period set forth in the Complaint, Plaintiff was a prisoner in a county detention center, not a guest in a hotel, and it should be expected that conditions in such a setting are often times less than ideal.  *See Bell*, 441 U.S. at 537 ("[T]he fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) ("Inmates cannot expect the amenities, conveniences and services of a good hotel.").  Plaintiff's allegations about the conditions at ACDC are insufficient to raise a genuine issue of fact as to whether any of his constitutional rights were violated.  *See Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991) (holding that changes in conditions of confinement and the denial of privileges are matters that every prisoner can anticipate and are necessarily functions of prison management and must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently).

Moreover, Defendants have averred their actions with respect to keeping Plaintiff in a single cell were in keeping with prison protocol for observing new inmates and maintaining security. [Doc. 30-2 ¶ 5.] Additionally, Hankins testified that inmates in lockdown would receive 30 minutes of recreation per day during the week if weather permitted, were allowed to shower each day, and had limited telephone privileges.  [Doc. 30-6 ¶ 5.]  A prison regulation infringing a prisoner's constitutional rights is valid if the regulation "is reasonably related to legitimate penological interests." *Turner v. Safley*, 482

11

U.S. 78, 89 (1987).  In *Turner*, the United States Supreme Court articulated a four-part test to determine whether a prison regulation is reasonable,[7] but because Plaintiff does not challenge the validity of ACDC's regulations or dispute the behavioral issues reported by Defendants, the Court has no basis for finding the regulations unreasonable. Consequently, Defendants' motion for summary judgment should be granted as to Plaintiff's conditions of confinement claims against Hankins and Ham.[8]

**Excessive Force Claim**

Excessive force claims raised by pretrial detainees are governed by the Due Process Clause of the Fourteenth Amendment.  *Orem v. Rephann*, 523 F.3d 442, 446 (4th Cir. 2008).  When analyzing such a claim, "[t]he proper inquiry is whether the force applied was 'in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  *Taylor v. McDuffie*, 155 F.3d 479, 483 (4th Cir. 1998) (citing *Whitley v. Albers*, 475 U.S. 312, 320–21(1991)), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010).  When evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response.  *Hudson v. McMillian*, 503 U.S. 1, 7 (citations omitted).

---

[7] The four factors are (1) whether there is a valid, rational connection between the regulation and "the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) how accommodating the asserted constitutional right will impact guards and other prisoners; and (4) whether there are ready alternatives to the regulation. *Turner*, 482 U.S. at 89–91 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).

[8] Additionally, both Hankins and Ham averred they do not determine cell assignments for inmates. [Id. ¶ 7; Doc. 30-6 ¶ 10.]

Here, there is no dispute Santos used force against Plaintiff when they tased him; the issue is whether the officers used excessive force. The facts are in dispute about whether the force used was necessary to maintain or restore discipline. Santos avers that force was used because she felt that she and Ashe were in potential danger because of Plaintiff's actions of being verbally aggressive and taking an aggressive stance before approaching Santos. [Doc. 30-5 ¶ 7.] Ashe avers that it was appropriate for Santos to use the taser for the same reasons. [Doc. 30-3 ¶ 7.] Plaintiff contends Santos took her taser out before the cell door was open and that Plaintiff was not acting in a threatening manner and stepped to the back of his cell in a non-threatening manner. [Doc. 41 at 10–11.] Plaintiff has also submitted a statement from Rodriguez, dated November 16, 2010, wherein Rodriguez states,

> From where I was standing in Control I could see Cpl Santos standing at the door before she shot him with the taser. At this time inmate Webber was about 4 feet away standing in his boxers brushing his teeth. Officer Ashe was standing behind her to the right so he was out of view. I looked away long enough to hit a control button and to call Lt Hankins. I did not see any threat of bodily harm. In my opinion it was not needed and not justifiable. At no point did I witness any type of threat. There was a lot of arguing between Cpl Santos and inmate Webber before the incident. After Lt Hankins came into A pod inmate Webber was yelling for Officer Ashe to tell the truth about Cpl Santos tasing him for no reason.

[Doc. 41-8.]

Crediting Plaintiff's version of what occurred, it cannot be said that force was applied in a good faith effort to maintain or restore discipline. Under these facts, it cannot be said Santos was trying to restore order. The Court is unable to assess the relationship between the need and the amount of force that was used. Further, the Court is unable to determine

13

whether there was any reasonably perceived threat that the application of force was intended to quell or whether any effort was made to temper the severity of a forceful response.  Because this matter must await determination of the facts now in conflict, qualified immunity as set forth in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) and its progeny is inappropriate as well.  Accordingly, Defendant Santos[9] in his individual capacity is not entitled to summary judgment on Plaintiff's excessive force claim.[10]

---

[9]Plaintiff appears to bring an excessive force claim against Santos and not Ashe because Ashe did not utilize the taser.  Instead, construing the Complaint liberally, Plaintiff alleges a failure to protect claim against Ashe for not preventing Santos from using the taser.  [Doc. 1 ¶ 81 (stating a cause of action against "Defendant Ashe[]'s failure to intervene to prevent the misuse of force").]  Defendants have failed to address the claim against Ashe as a failure to protect claim; accordingly, the Court recommends that summary judgment be denied with respect to this claim.

Additionally, Plaintiff brings a state law claim of assault and battery against Santos for the use of force [Doc. 1 ¶ 82] and a state law claim of negligence against Hankins for failing to use reasonable care to properly identify the correct detainee to go to court [*id*. ¶ 89].  Defendants have failed to address these claims as state claims in their memorandum in support of motion for summary judgment and instead addressed them only as § 1983 claims.  Accordingly, the Court recommends that summary judgment be denied with respect to these state law claims because the Court has supplemental jurisdiction over these claims if the § 1983 excessive force and failure to protect claims survive summary judgment.

[10]Defendants also argue Plaintiff's Complaint should be dismissed pursuant to the Prison Litigation Reform Act ("PLRA") because Plaintiff has failed to allege any physical injury.  [Doc. 30-1 at 27.]  Defendants cite 42 U.S.C. § 1997(e), which provides,  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury," to support their argument, but Defendants have failed to cite to any cases interpreting § 1997(e) in the context of an excessive force claim.  In response, Plaintiff alleges he seeks nominal damages and punitive damages, citing *Calhoun v. DeTella*, 319 F.3d 936 (7th Cir. 2003), and *Allah v. Al-Hafeez*, 226 F.3d 247 (3d Cir. 2000), for the proposition that nominal and/or punitive damages are available for constitutional violations without a showing of physical injury.  [Doc. 40 at 35–37.]  The Court has reviewed the cases Plaintiff cites, and these cases hold that although § 1997(e) bars recovery for compensatory damages for mental and emotional injury, it does not bar recovery for other types of damages because the deprivation of a constitutional right is itself a cognizable right.  *Calhoun*, 319 F.3d at 940–41; *Allah*, 226 F.3d at 251–53; *see also Green v. Padula*, No. 9:07-0028-CMC-GCK, 2007 WL 895484, at *2 (D.S.C. Mar. 21, 2007) (collecting cases from the Second, Third, Seventh, Ninth, Tenth, and Eleventh Circuits that have determined that § 1997(e) does not preclude a prisoner from seeking nominal damages and from the Third, Eighth, and Tenth circuits that have determined that § 1997(e) does not preclude a prisoner from seeking punitive damages).  Accordingly, the Court should deny Defendants' motion for summary judgment on this basis.

14

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that Defendants' motion for summary judgment be GRANTED IN PART and DENIED IN PART.  The Court recommends that the motion be (1) granted with respect to Plaintiff's conditions of confinement claim against Hankins and Ham; excessive force claim against Santos in his official capacity; and failure to protect claim against Ashe in his official capacity[11] but (2) denied with respect to Plaintiff's excessive force claim against Santos in his individual capacity; failure to protect claim against Ashe in his individual capacity; assault and battery claim against Santos; and negligence claim against Hankins.  If this Report and Recommendation is adopted by the District Judge, it is also recommended that counsel be appointed for Plaintiff for the trial of this action.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

January 31, 2014
Greenville, South Carolina

---

[11]Plaintiff does not bring any claims for injunctive relief against Santos and Ashe.  [*See* Doc. 1 at 35–42 (relief section of Complaint).]

15