IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Mauricio E. Weber, | ) | |
| | ) | C/A No. 8:12-3349-TMC |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **OPINION & ORDER** |
| | ) | |
| | ) | |
| Arlette Jones; Lt. FNU Hankins; | ) | |
| Corporal Santos; Capt. FNU Ham; | ) | |
| Lt. FNU Collins; Officer FNU Reeves; | ) | |
| Cpl. Rhonda Latimer; Major Garry L. | ) | |
| Bryant; Officer FNU Ashe; Deputy | ) | |
| FNU Holden; Lt. FNU Hayden; | ) | |
| Lt. FNU Looper; and Sgt. FNU Tribble, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Mauricio E. Weber ("Weber"), proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983. This matter is before the court on Defendants' motion for summary judgment. (ECF No. 30). Weber filed a response opposing the motion (ECF No. 41) and Defendants filed a reply (ECF No. 46). On January 31, 2014, the magistrate judge assigned to this matter filed a Report and Recommendation ("Report") in which she recommended that Defendants' Summary Judgment Motion be granted in part and denied in part. (ECF No. 58). Both Weber and Defendants timely filed objections. (ECF Nos. 60 and 62). Defendants also filed a reply to Weber's objections. (ECF No. 63).

The magistrate judge makes only a recommendation to the court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The court is charged with making a de novo determination of those portions of the Report to which specific objection is made, and the court may accept, reject, or modify, in whole or in part, the recommendation of the magistrate judge, or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The court is obligated to conduct a de novo review of every portion of the magistrate judge's report to which objections have been filed. *Id.* However, the court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

### I. Facts/Background

The report summarizes the facts and procedural background. (Report 2-4). Briefly, at the time of the incidents alleged in the Complaint, Weber was a pretrial detainee at the Anderson County Detention Center ("ACDC"). On the morning of November 15, 2010, Defendant Officer Ashe told Weber to get ready for a court appearance. During the subsequent ten minutes, Ashe and Defendant Officer Rodriguez checked on Weber twice, and the last time, Weber stated that he needed ten more minutes. However, after five minutes, Defendants Corporal Santos and Ashe went to Weber's cell and directed Weber to put on his jumpsuit and Santos threatened to use her taser Weber if he did not. Santos and Ashe were at the door to Weber's cell and Santos repeated her threat. Weber states he backed up into his cell in a non-threatening manner and asked for a supervisor. Santos asked Weber if he was refusing to comply with a direct order, and Weber responded by asking if he could brush his teeth. Santos then shot Weber with her taser. Weber was afforded medical treatment and taken to court. Afterwards, Weber alleges he was assured by Defendants Lt. Hankins and Captain Ham that the incident would be investigated, but instead he alleges he was placed on lockdown and a false incident report was filed to justify Santos' actions. Later, it was determined that Weber actually did not have a court appearance that morning and Defendant Santos had confused Weber with another inmate with a similar last name.

Weber brought this action alleging claims, inter alia, of excessive force, violations of due process, and state law claims of assault and battery based upon the tasing and negligence, based upon the incorrect notification of a court appearance.[1]

## II. Standard of Review

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. Discussion

In her report, the magistrate judge recommends that summary judgment be granted on the conditions of confinement claims against Defendant Hankins and Ham and denied on the excessive force claim against Defendant Santos, the failure to protect claim against Defendant Ashe, and the state law claims against Defendants Santos and Hankins. (Report at 8). Additionally, the magistrate judge recommends that claims against Defendants in their official capacities be dismissed on the ground of Eleventh Amendment immunity. (Report at 8 n.8).

---

[1] As noted in the Report, nine Defendants named in the Complaint have been dismissed along with several claims. (Report at 2 n.3).

3

**A. Weber's Objections**

In his objections, Weber contends that the magistrate judge erred by recommending that claims against Defendants in their official capacities be dismissed based upon Eleventh Amendment immunity; by referring to Santos as a female; by recommending that supervisory liability claims be dismissed; by construing Weber's conditions of confinement claims incorrectly; by construing the negligence claim as being brought against Defendant Hankins, when Weber has since discovered that it was Defendant Santos who received the phone call regarding the court appearance and confused Weber with another inmate; and by referring to the court's text order granting in part and denying in part Weber's motion to amend his complaint. (Plaintiff's Objections, ECF No. 60). The court addresses each of these objections in turn below.

Weber contends that the magistrate erred in recommending the dismissal of any claims against Defendants in their official capacities. (Pl.'s Objections at 2-4). However, as explained by the magistrate judge in her Report (Report at 8 n. 6), a suit against a state official in his official capacity is not a suit against the official but rather is a suit against the official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (*citing Brandon v. Holt*, 469 U.S. 464, 471 (1985)). As such, it is no different from a suit against the State itself, and is therefore barred under the Eleventh Amendment. *Will*, 491 U.S. at 71. Accordingly, the court agrees with the magistrate judge that the claims against Defendants in their official capacities should be dismissed based upon Eleventh Amendment immunity.

Weber then objects to the magistrate judge's references to Defendant Santos, a female, as a male. (Pl.'s Objections at 4). Although acknowledging that these are merely typographical errors, Weber argues that Defendants could exploit these technicalities to avoid liability.[2]

---

[2]The court notes that the magistrate judge correctly referred to Santos as a female at several places in her Report. (Report 3, 13).

Ironically, however, Weber contends these same technicalities somehow provide a basis for granting him summary judgment on his claims of excessive force and assault and battery against Santos. (Pl.'s Objections at 4).  This objection is wholly without merit and Weber is not entitled to summary judgment based upon the magistrate judge's harmless typographical errors.[3]

As for the magistrate judge's recommendation that any supervisory claims be dismissed, Weber contends that he is not suing Defendant Ham in his supervisory capacity.  (Pl.'s Objections at 5).  The magistrate judge liberally construed the Complaint, as required, and recommended that any supervisory claims be dismissed.  As Weber now contends that he did not raise such a claim,  the recommendation is moot.

Weber contends that the magistrate judge incorrectly construed his conditions of confinement claims as raising allegations regarding administrative segregation, rather than punitive segregation.  In his Complaint, Weber alleges that Defendants Hankins and Ham violated his due process rights by placing him on lockdown after the November 15, 2010 incident without disciplinary charges and subsequently depriving him of out of cell recreation. (Compl. 84, 85).  In response to Defendants' Summary Judgment Motion, Weber argues Defendants Hankins and Ham changed his custody status from administrative segregation to punitive segregation, or lockdown, after the November 15, 2010 incident, violating his due process rights. (ECF no. 41 at 18).  On November 23, 2010, Weber states he appeared before a disciplinary board and his custody status was changed back to administrative segregation. (ECF No. 41 22-23).  It appears the magistrate judge viewed Weber as claiming a due process violation from being placed in administrative segregation.  In his objections, Weber contends that he is actually seeking relief for his placement on lockdown after the November 15, 2010 incident. (Pl.'s Objections at 11).  Weber argues that because Defendants Ham and Hankins did

---

[3] Moreover, the court notes that this matter is before the court on Defendants' summary judgment motion and  Weber has not filed a motion for summary judgment.

not deny placing Weber's on lockdown which resulted in his deprivation of out of cell recreation, these Defendants have conceded these claims. *Id.* This argument is without merit.

Claims concerning conditions of confinement imposed upon pretrial detainees are examined under the Due Process Clause of the Fourteenth Amendment as opposed to the cruel and unusual punishment prohibition of the Eighth Amendment, which applies to convicted inmates. *Bell v. Wolfish*, 441 U.S. 520, 535-38 (1979).[4] As a pretrial detainee, Weber has a due process right against restrictions that amount to punishment. *Id.* at 535. However, conditions of confinement that are imposed for, and reasonably related to, a legitimate government interest do not amount to punishment. *Id.* at 538–39. "[N]ot every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill*, 979 F.2d at 991 (*citing Bell*, 441 U.S. at 537). "[A] court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id.* at 538. In considering this issue, it is important to remember that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

Here, it is clear why Weber was being placed in punitive segregation. He was temporarily placed in segregation pending an investigation into the November 15, 2010 incident. And after the hearing on November 23, 2010, he was released from punitive segregation. It is not at all unreasonable to expect the officials of the ACDC to want to place Weber into punitive

---

[4]Due to his pre-trial detainee status, Plaintiff's constitutional claims are analyzed under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment. However, as a practical matter, courts do not distinguish between the Eighth and Fourteenth Amendments in the context of a pre-trial detainee's §1983 claim. *See Hill v. Nicodemus*, 979 F.2d 987, 990-92 (4th Cir. 1992).

segregation during the investigation of the incident. Such action is reasonably necessary in order to maintain security and internal order. Accordingly, the court finds the Defendants should be granted summary judgment on Weber's conditions of confinement claims.

### B. Defendants' Objections

Defendants object to the magistrate judge's recommendation that the court deny summary judgment on the following claims: excessive force claim against Defendant Santos in her individual capacity, alleged failure to protect claim against Defendant Ashe in his individual capacity, alleged assault and battery claim against Defendant Santos, and alleged negligence claim against Defendant Hankins. (Defendants' Objections, ECF No. 62).

Crediting Weber's version of the incident, the magistrate judge recommended that Defendant Santos be denied summary judgment on the excessive force and assault and battery claims against Defendant Santos. (Report at 13-14). In their objections, Defendants contend that Defendant Santos was acting in a good faith effort to maintain security and that Weber has failed to show a constitutional violation. (Defs.' Objection at 2-3). However, as the magistrate judge concluded, the court finds there is genuine question of material fact as to the excessive force and assault and battery claims. (Report at 13-14). Accordingly, the court denies Defendant Santos summary judgment on the excessive force and assault and battery claims.

The magistrate judge also recommended denying Defendants summary judgment on the failure to protect claim against Defendant Ashe. (Report 14 n.9).[5] Defendants object contending

---

[5] The magistrate judge liberally construed the Complaint as setting forth a claim of failure to protect. (Report at 14 n.9). The court is not convinced Weber sufficiently raised this claim in his Complaint. Weber first raises this issue in the "Claims for Relief" section of his Complaint and his entire claim is that "Defendant Ashe's failure to intervene to prevent the misuse of force and then filing a false incident report to cover-up and justify Defendant Santos misuse of force were done maliciously and sadistically and constituted punishment without due process of law in violation of the Fourteenth Amendment to the united States Constitution." (Compl. ¶ 81). Weber did not allege any facts to support these allegations. Moreover, Weber's own self-serving statements regarding allegedly false incident reports, without more, are insufficient to create a genuine dispute of fact. *See White v. Boyle,* 538 F.2d 1077, 1079 (4th Cir.1976) (conclusory

that Weber has not shown that Defendant Ashe was deliberately indifferent to the Santos' use of the taser or that Ashe could have prevented Weber from being tased. (Defs.' Objections at 2-3).

In *Randall v. Prince George's County, Md.*, 302 F.3d 188 (4th Cir. 2002), the Fourth Circuit adopted a test for the evaluation of failure to act claims under § 1983. "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Id.* at 204. Assuming arguendo, that Weber has established the first factor, namely, that Defendant Ashe had reason to know Santos would utilize excessive force, Weber has not shown any facts establishing the second factor. There is no evidence that Ashe had a realistic opportunity to prevent Santos from using her taser. As Weber states in his response opposing Defendants' summary judgment motion, he "was shocked that Defendant Santos shot him for no reason" and "without need or provocation or further warning Defendants Santos shot [him] with the taser." (ECF No. 41 at 12, 14). *See also* Compl. ¶ 36. Weber has made no showing that Defendant Ashe was in a position to intervene at the moment Weber was tased and chose not to act. Accordingly, Defendant Ashe is entitled to summary judgment on the failure to protect claim.

Weber also brings a negligence claim against Defendant Santos.[6] Weber alleges that Defendant Santos failed to use reasonable care to properly identify the detainee who had the court appearance on November 15, 2010. Weber contends that Santos failed to use reasonable care by failing to look at Weber's identification armband. (ECF No. 41 at 17). Weber contends that as a result, Santos proximately caused him to be "tazed completely unjustified or

---

allegations insufficient to avoid summary judgment);

[6]In his Complaint, Weber alleges it was Defendant Hankins who mistakenly identified him as the detainee who had a court appearance that morning. (Compl. 89). Weber has since argued that it was Defendant Santos who made the mistake. (ECF Nos. 60 at 15; 41 at 17).

8

unprovoked." *Id.* at 18.  Noting Defendants treated Weber's negligence claim as a claim under § 1983, the magistrate judge recommended denying Defendants summary judgment on the negligence claim.  (Report 14 n.9).  Defendants object and contend that this negligence claim appears to be one under § 1983, and not a state law claim (Defs.' Objections at 3).  Moreover, Defendants contend that, even if this negligence claim is considered a state law claim, it should be dismissed pursuant to the South Carolina Torts Claim Act ("SCTCA").  *Id*.  Reviewing the Complaint, it appears Weber is bringing this as a state law claim as Weber specifically alleges that the court has supplemental jurisdiction over his state law torts claims.  (Compl. ¶ 2).

Additionally, in their objections, Defendants contend the magistrate erred in not recommending summary judgment be granted on Weber's negligence claim because Weber failed to allege any negligence in regard to the mistaken identity, let alone gross negligence. (Objections at 5).  Moreover, Defendants contend that Weber has failed to establish any damages proximately caused by any alleged breach of a duty owed by Hankins. The court agrees.

Although a State may waive sovereign immunity and consent to being sued in federal district court, South Carolina has not done so.  Instead, the SCTCA expressly provides that the South Carolina does not waive Eleventh Amendment immunity. *See* S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver to the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina.").  *See also Laudman v. Padula,* 3:12-cv-2382-SB, 2013 WL 5469977, *7 (DS.C. Sept. 30, 2013).  The State consents to suit only in a court of the State of South Carolina and not to suit in a federal court or in a court of another State. *Id.*  Furthermore, the SCTCA is the exclusive remedy for individuals suing government employees acting within the scope of their employment. *See* S.C.Code Ann. § 15-8-70(a).  Furthermore, "the SCTA requires the agency or political subdivision to be substituted when an employee is individually names, and

9

the agency is similarly entitled to Eleventh Amendment immunity in federal court." *King v. Ozmint,* 2012 WL 4092689, *3 (D.S.C. Aug.17, 2012).

Weber's negligence claim against Santos focuses on alleged errors in the performance of her duties, and not actions outside the scope of her duties. Therefore, the Weber may pursue a negligence tort claim against Defendant Santos only in state court. *See DeCecco v. University of South Carolina*, 918 F.Supp.2d 471, 498 (D.S.C. 2013) (finding that even if the SCTCA allowed the plaintiff's gross negligence claim against USC to proceed in state court, "it would not allow it to proceed in federal court"). Accordingly, Weber's negligence claim against Defendant Santos should be dismissed.

### C. Appointment of Counsel

In her Report, the magistrate judge also recommends that the court sua sponte appoint counsel if this case proceeds to trial. Weber objects contending that the court should appoint only a civil attorney based upon his perceived potential for conflict with his upcoming criminal proceedings in state court. Absent a motion, the court declines to adopt this part of the Report.[7]

### IV. Conclusion

Based on the foregoing, the Defendants' summary judgment motion is **GRANTED in part and DENIED in part**. The court dismisses the claims against Defendants in their official capacities, claims regarding the conditions of confinement, the negligence claim against Defendant Santos, and the failure to protect claim against Defendant Ashe. Only Plaintiff's claims of excessive force and assault and battery against Defendant Santos in his individual

---

[7] There simply is no constitutional right to court-appointed counsel in a federal civil case, and there is no fund out for payment for such appointments. However, pursuant to 28 U.S.C. § 1915(e)(1), district courts may request the assistance of private attorneys to represent indigent parties in exceptional circumstances. *See generally Whisenant v. Yaum*, 739 F.2d 160, 163 (4th Cir. 1984). The decision to appoint counsel in a pro se case remains within the discretion of the trial judge. *Id*. The complexity and nature of the case, as well as the plaintiff's own knowledge, direct the exercise of this discretion. *Id.* at 162.

capacity remain.

**IT IS SO ORDERED.**

                                          s/Timothy M. Cain
                                          United States District Judge

March 26, 2014
Anderson, South Carolina


**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.